IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DERWIN ROGERS                                                                          PETITIONER

VS.                                                        CIVIL ACTION NO. 3:07CV600TSL-FKB

STATE OF MISSISSIPPI                                                              RESPONDENT
AND CHRISTOPHER EPPS, COMMISSIONER
OF MDOC

REPORT AND RECOMMENDATION

This cause is before the undersigned on the petition of Derwin Rogers for habeas corpus relief

pursuant to 28 U.S.C. §2254.  Having considered Rogers' petition, and the State's answer, the

undersigned concludes, for the reasons which follow, that the petition is not well taken and

recommends that it be denied and dismissed with prejudice.

I.  FACTS AND PROCEDURAL HISTORY

In August, 2002, after a trial in the Circuit Court of Franklin County, Mississippi, petitioner

was convicted of four counts of forcible rape in violation of Mississippi Code Annotated § 97-3-65.[1]

The facts underpinning petitioner's conviction are set forth in the Mississippi Supreme Court's

decision and are as follows:

> In 1989, A.H. was a seventeen-year-old female placed in the foster care of Reverend
> David Franklin and his wife, Edna Franklin.  A.H. lived in the group home, Project
> Gain, located in Jackson, Mississippi.  During the Christmas holidays, the girls living

---

[1]      The record reflects that Rogers was indicted on the rape charges on May 2, 2002 in
Cause No. 02-KR-016.  Around the same time, two other indictments were issued against him in
Franklin County.  He was indicted on one count of sexual battery in Cause No. 02-KR-010 and one
count of forgery in Cause No. 02-KR-024.  It does not appear that Rogers was ever tried on the other
two indictments.

at Project Gain had to find other accommodations because the Franklins went to Colorado during the Christmas holidays. A.H. was placed with the Franklins's friends, Reverend Derwin Rogers and his wife, in Meadeville, Mississippi, while the Franklins were away. Rogers lived in a house connected to his church. A.H. was staying at the Rogers's home between December 21, 1989, and January 3, 1990, when she was raped by Rogers.

A.H. testified that Rogers forced her to have sex with him on four occasions during her stay in his home. A.H. testified that on each of the four occasions Rogers came into her bedroom and put a handgun to her head. He made her take off her clothes and have sex with him. Rogers told A.H. he would kill her and bury her in the backyard in the cemetery if she screamed or told anyone. A.H. testified that the sex was not consensual. A.H. testified that Rogers was always at the home and that Rogers controlled her access to avoid her telling anyone about the rape.

Cindy Brasher, A.H.'s caseworker at the Mississippi Department of Human Services, testified that A.H. had tried to call her during the Christmas holidays, but she was not at home. When Brasher called A.H. back at Rogers's home, Rogers answered the phone. Brasher stated that she could tell A.H. was upset. However, A.H. told Brasher she could not talk to her.

Reverend Franklin testified that when he and his wife returned from Colorado they picked A.H. up from Rogers's home. A.H. told him that Rogers had raped her on more than three occasions. However, Reverend Franklin testified quoting scripture that because Reverend Rogers was an "elder" in the church, he did not believe the allegation because there were no witnesses. He never confronted Rogers with the allegation, but he told A.H. she could report the rape to her caseworker.

Brasher testified that she received a report on January 5, 1990, that A.H. alleged she had been raped. Brasher interviewed A.H. on January 9, 1990. A.H. informed her that Rogers had forced her to have sex with him on four occasions between December 21, 1989, and January 3, 1990, describing the incidents including the threats to her life and the handgun. Brasher interviewed Rogers who initially denied that any sexual relation occurred with A.H. and denied that he possessed a gun. Later in the interview, Rogers showed Brasher the gun and stated that he had shown the gun to A.H.

Rogers v. State, 928 So. 2d 831, 833-34 (Miss. 2006) (abbreviating victim's name to protect her identity). Rogers received four terms of thirty years each to be served concurrently in the custody of the Mississippi Department of Corrections.

Rogers, through new, appointed counsel on appeal, assigned as error the following in his appeal to the Mississippi Supreme Court:

A. Did the trial court err by allowing the amendment to the indictment on the morning of trial?

B. Was Rogers' conviction and sentence violative of the ex post facto clause?

C. Did the State fail to meet its burden under the amended indictment because the putative victim was seventeen years old at the time of the alleged offense?

D. Did the trial court err in denying Rogers' motion for a new trial because of the district attorney's improper comments on Rogers' failure to testify?

E. Did the trial court err in ruling that the priest-penitent privilege did not apply to Reverend Franklin's testimony?

F. Did the trial court err in admitting testimony about statements made by a third party about other statements made by Rogers?

G. Was Rogers denied his right of confrontation when testimony about out of court statements by a third party was admitted?

In 2006, the Mississippi Supreme Court affirmed the convictions.  See Rogers, 928 So. 2d at 839.

On July 20, 2007, Rogers, through new, retained counsel, filed an "Application for Leave to File Motion for Post-Conviction Relief" in the Mississippi Supreme Court.  By this filing, he raised the following issues for consideration:

A. The trial court impermissibly denied Rogers his state and federal constitutional rights to counsel of his own choice by denying him a one-week continuance so that his attorney, who had an unexpected conflict in another court, could represent him at the trial.

3

B. Trial and appellate counsel were constitutionally ineffective in failing to recognize and object to the denial of counsel of choice.

C. The trial court erred in allowing the prosecution to substantively amend the indictment on the first day of trial.

D. Trial and appellate counsel were constitutionally ineffective in failing to object at trial or raise the issue on appeal.

E. Counsel were constitutionally ineffective in failing to object and develop evidence of the inadmissability of AH's allegedly prior consistent statements which were introduced at trial in violation of Rogers' constitutional rights to due process and his Sixth Amendment right to confrontation.

F. Appellate counsel was constitutionally ineffective in failing to raise the issue on appeal.

G. Trial counsel were constitutionally ineffective in failing to properly object at trial to the admission of the testimony that Rogers said he had had sex with AH and/or to develop evidence because these communications were privileged.

H. Appellate counsel was ineffective in failing to adequately brief the issue on appeal.

I. Rogers received ineffective assistance of counsel at trial and on appeal.
> a. Failure to obtain and introduce exculpatory evidence and testimony;
> b. Ineffective assistance on appeal.

On September 30, 2007, the Mississippi Supreme Court denied Rogers' motion, ruling as

follows:

The panel finds that most of the claims raised in the petition either were raised at trial and on direct appeal or were capable of being raised in those proceedings.  Those claims are therefore procedurally barred. Miss. Code Ann. § 99-39-21. Notwithstanding the procedural bar, those claims are without

4

merit.  The panel further finds that the claims of ineffective
assistance of counsel fail to meet the standard set out in
*Strickland v. Washington*.

Thereafter, Rogers, again through counsel, filed his petition in this court, raising the following

grounds for relief:

A. Ground One - The trial court impermissibly denied Rogers
his federal constitutional right to counsel of his own choice
by denying him a one-week continuance so that his attorney,
who had an unexpected conflict in another court, could
represent him at the trial.

B. Ground Two - Trial and appellate counsel were
constitutionally ineffective in failing to recognize and object
to the denial of counsel of choice.
C. Ground Three - The trial court erred in allowing the
prosecution to substantively amend the indictment on the first
day of trial in violation of the Fifth and Sixth Amendments.

D. Ground Four - Trial and appellate counsel were
constitutionally ineffective in failing to object at trial or raise
the issue on appeal.

E. Ground Five - Counsel were constitutionally ineffective in
failing to object and develop evidence of the inadmissability
of AH's allegedly prior consistent statements which were
introduced at trial in violation of Rogers' constitutional rights
to due process and his Sixth Amendment right to
confrontation.

F. Ground Six - Appellate counsel was constitutionally
ineffective in failing to raise the issue on appeal.

G. Ground Seven - Trial counsel were constitutionally
ineffective in failing to properly object at trial to the
admission of the testimony that Rogers said he had had sex
with AH and/or to develop evidence because these
communications were privileged.

H. Ground Eight - Appellate counsel was ineffective in
failing to adequately brief the issue on appeal.

I. Ground Nine - Rogers received ineffective assistance of counsel at trial and on appeal.
    a. Failure to obtain and introduce exculpatory evidence and testimony.
    b. Ineffective assistance on appeal.

J. Ground Ten - In denying post-conviction relief, the Mississippi Supreme Court has arrived at a decision which conflicts with a conclusion reached by the Supreme Court on a question of law and/or has decided the case differently than the Supreme Court has on a set of materially indistinguishable facts and/or has applied a rule different from the governing law set forth in the supreme court's cases and/or if it identified the correct governing legal principle from the Supreme Court's decisions, the court unreasonable applied it to the facts of the petitioner's case

The Respondent asserts that applicable portions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 12144, prevent this court from granting relief.  The undersigned agrees.

## II. <u>Discussion</u>

### A. <u>Procedurally Barred Claims</u>

Grounds One and Three presented by Rogers in this habeas petition were not presented to the Mississippi Supreme Court on direct appeal; however, they were submitted to the Mississippi Supreme Court in his application for post-conviction relief.  In its order denying Rogers' application to proceed in the trial court, the Mississippi Supreme Court found that the claims were procedurally barred pursuant to Miss. Code Ann. § 99-39-21.  The court further found that "the claims of ineffective assistance of counsel [Grounds Two, Four, Five, Six, Seven, Eight and Nine of the application for post-conviction relief] fail to meet the standard set in  <u>Strickland v. Washington</u>."[2]

---

[2]    As Respondent points out, Ground Ten is merely a recitation of the standard of review of Rogers' claims in this court.

Strickland v. Washington, 466 U.S. 668, 104 S. Ct 2052, 80 L. Ed. 2d 674 (1984).  Based on the

following, the undersigned agrees with Respondent that consideration of Grounds One and Three of

his federal habeas petition are barred.

The Mississippi Supreme Court often applies Miss. Code Ann. § 99-39-21(1) in situations

such as Rogers'.  Section § 99-39-21(1) specifically provides as follows:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors
> either in fact or law which were capable of determination at trial and/or on direct
> appeal, regardless of whether such are based on the laws and the Constitution of the
> state of Mississippi or of the United States, shall constitute a waiver thereof and shall
> be procedurally barred, but the court may upon a showing of cause and actual
> prejudice grant relief from the waiver.

The Mississippi Supreme Court did not find cause and actual prejudice to excuse the default.

A federal court will not review a state prisoner's federal habeas claim when the state based

its rejection of that claim on an adequate and independent state law ground.  Coleman v. Thompson,

501 U.S. 722, 750 (1991); see Sayre v. Anderson, 238 F.3d 631, 634 (5th Cir. 2001) (citing

Coleman, 501 U.S. at 750).  Consequently, "[w]hen a state-law default prevents the state court from

reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court."

Ylst v. Nunnemaker, 501 U.S. 797 (1991) (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977)).

The rule is grounded in concerns of comity and federalism.  Rosales v. Dretke, 444 F.3d 703, 707

(5th Cir. 2006).  A "habeas petitioner who has failed to meet the State's procedural requirements for

presenting his federal claims has deprived the state courts of an opportunity to address those claims

in the first instance."  Id., citing Coleman, 501 U.S. at 730.

In order to be "adequate" to support the judgment, a procedural bar rule must be "strictly or

7

regularly" applied by the state to the "vast majority of similar claims." <u>Amos v. Scott</u>, 61 F.3d 333, 339 (5th Cir.), <u>cert</u>. <u>denied</u>, 516 U.S. 1005 (1995).  A state has failed to strictly and regularly apply a procedural rule only when the state "clearly and unequivocally excuse[s] the procedural default," and when the state fails to apply the rule to claims "identical or similar" to the petitioner's claims. <u>Amos</u>, 61 F.3d at 341-42.  The petitioner bears the burden to establish that the Mississippi procedural bar rule was not strictly and regularly followed at the time of his post-conviction motion. <u>Sones v. Hargett</u>, 61 F.3d 410, 416 (5th Cir. 1995).  Rogers has not purported to meet this burden.

Section 99-39-21 has been held to be an independent state procedural bar.  <u>Stokes v. Anderson</u>, 123 F.3d 858, 860 (5th Cir. 1997).  In determining that the state court rested its decision "independently" on the state procedural bar, the court must look to the wording of the decision itself.  In Rogers' case, the Mississippi Supreme Court stated that the claims which were capable of being raised on appeal but were not were barred per § 99-39-21.  Rogers does not deny that these issues were capable of being raised on direct appeal.  Rather, the crux of his argument is that constitutionally competent counsel would have pursued these issues at trial and on appeal.

Under <u>Smith v. Cockrell</u>, 311 F.3d 661, 684 (5th Cir. 2002), the Supreme Court's pronouncement is sufficient to conclude that the state's decision rested "independently on the state procedural grounds."  Rogers was obliged to present his constitutional claims to the State's highest court in a procedurally proper manner.  Absent exceptional circumstances, this court cannot now consider the merits of the claims.  <u>See</u> <u>Teague v. Lane</u>, 489 U.S. 288 (1989).[3]

---

[3]    Rogers has not asserted that failure to consider his procedurally barred claims would result in the "fundamental miscarriage of justice" under <u>Coleman</u>.  A miscarriage of justice in this context means that the petitioner is actually innocent of the crime for which he was convicted. <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339-40 (1992); <u>Finley v. Johnson</u>, 243 F.3d 215, 220 (5th Cir. 2001).  To support an actual innocence claim, a petitioner must support his allegations with "new,

Rogers asserts that his trial and appellate counsels' ineffectiveness constitute exceptional circumstances which permit this court to consider Grounds One and Three of his petition.  In Coleman, the United States Supreme Court addressed the exceptional circumstances required in order for the federal courts to excuse a state defaulted claim:

> We now make it explicit:  In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. . . .

Id. at 750.  In general, to show cause, a petitioner must demonstrate "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." McCleskey v. Zant, 499 U.S. 467, 488 (1991).  If a petitioner fails to show cause for his procedural default, the court need not address the prejudice prong of the test.  See Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

"A defendant may show  'cause' by proving ineffective assistance of counsel in violation of the Sixth Amendment of the Constitution."  Pickney v. Cain, 337 F.3d 542, 545 (5th Cir. 2003). However, the Mississippi Supreme Court considered and rejected Rogers' ineffective assistance of counsel claims offered as cause to overcome the procedural bar imposed as to Grounds One and Three.  Having reviewed the record on this matter, the undersigned concludes that, for the reasons stated infra,  the state court's decision that Rogers did not receive ineffective assistance of counsel when his trial and appellate counsel did not raise Grounds One and Three as issues at trial or on

---

reliable evidence that was not present at trial" that would show that it was "more likely than not" that no reasonable juror would have convicted him with this new evidence.  Fairman v. Anderson, 188 F.3d 635, 644 (5th Cir.1999).

appeal, did not amount to an unreasonable application of <u>Strickland</u>. <u>See</u> <u>infra</u> at pp. 12-20.

Accordingly, as Rogers has not overcome the procedural bar as to these grounds, relief should be

denied.

### B. <u>Remaining Claims</u>

#### 1. <u>Applicable Standard</u>

The standard of review for the claims which may be reviewed by this court-- Grounds Two,

Four, Five, Six, Seven, Eight and Nine-- is set forth in 28 U.S.C. § 2254(d).  This section provides

as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Under AEDPA, where the state court adjudicated the petitioner's claim on the merits, this court

reviews questions of fact under § 2254(d)(2), while questions of law or mixed questions of law and

fact are reviewed under § 2254(d)(1).  Factual findings, including implied findings,[4] are presumed to

---

[4]      Rogers asserts that Mississippi Supreme Court's decision regarding his ineffective assistance of counsel claims is not due the deferential review set forth above because its two-paragraph order did not specify which claims were procedurally barred and because the state court failed to make explicit factual findings on evidence critical to Rogers' claim.  With regard to Rogers' former argument, as set forth above, Respondent does not take the position that any of Rogers' ineffective assistance of counsel claims presented are procedurally barred.  Rather, it maintains that the Mississippi Supreme Court's one-sentence decision–"The panel further finds that the claims of

be correct, and the court defers to the state court's decision regarding factual determinations unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000); Gallegos v. Quarterman, 2008 WL 360576,  No. 05-10885, at *3 (5th Cir. Feb. 8, 2008) ("When a state court's rulings are vague, its implied factual findings and legal rulings are still entitled to deference."); see e.g., Young v. Dretke, 356 F.3d 616, 629 (5th Cir. 2004) (implicit factual findings are entitled to deference); Santellan v. Cockrell, 271 F.3d 190, 193-94 (5th Cir. 2001) (ultimate ruling of state court entitled to deference even if no explanation for ruling is given); See also Harrington v. Richter, 131 S. Ct. 770, 785 (2011) ("This Court now holds and reconfirms that § 2254(d) does not require the state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

The court independently reviews questions of law and mixed questions of law and fact to determine whether the state court's decision thereon was either "contrary to" or an "unreasonable application of" federal law.  Williams v. Taylor, 529 U.S. 362, 403-408 (2000); Hill, 210 F.3d at 485.  In Wiggins v. Smith, 539 U.S. 510, 520, 123 S. Ct. 2527, 156 L. Ed.2d 471 (2003), the Supreme Court "made clear that the 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of petitioner's case."  Thus, "[t]he question under AEDPA is not whether a federal court believes the state court's

ineffective assistance of counsel fail to meet the standard set out in Strickland v. Washington "-constitutes a decision on the merits which is entitled to deference.  As to the latter argument, as set forth in the text, the state court's implied factual findings are entitled to deference under the AEDPA.

determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed.2d 836 (2007).

By each of his remaining claims, petitioner asserts that he is entitled to relief due to his trial and/or appellate counsel's ineffectiveness.  In order to prevail on a claim for ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In <u>Strickland</u>, the Supreme Court held that before post-conviction relief can be granted for ineffective assistance of counsel, the petitioner must establish (1) that counsel's performance was deficient in that it fell below an objective standard of reasonable professional service; and (2) that this deficient performance prejudiced the defense such that there is a reasonable probability that the outcome of the trial has been undermined and the result would have been different.  <u>Strickland</u>, 466 U.S. at 687, 688.  A petitioner's failure to establish both prongs of the <u>Strickland</u> test warrants rejection of his claims.

Under the AEDPA, a federal habeas court must further evaluate these grounds pursuant to the parameters set forth in <u>Williams v. Taylor</u> that a habeas petitioner must show that the state court decision regarding a claim of ineffective assistance of counsel was either "contrary to" federal law, as determined by the Supreme Court, or an "unreasonable application" of <u>Strickland</u>.  <u>Bell v. Epps</u>, No. 08-70031, 2009 WL 3073143, at *4 (5th Cir. Sept. 28,  2009).   The Supreme Court has further held that "because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Knowles v. Mirzayance</u>, --- U.S. ----, 129 S. Ct. 1411, 1420, 173 L. Ed.2d 251 (2009). With these principles in view, the Court considers the remaining grounds set forth in Rogers' petition.

2. <u>Failure to raise the issue of the denial of counsel of choice- Ground Two</u>

12

By this ground, Rogers argues that his trial and appellate counsel were ineffective in failing to recognize and object to the trial court's denial of his choice of counsel, the issue raised in Ground One of this petition.  In support of this claim,  Rogers points out that on the morning of trial, two attorneys appeared in court on behalf of Martin Regan, Jr., the Louisiana attorney who had been retained by Rogers to represent him at trial.  The attorneys represented to the trial judge that Regan had unexpectedly found himself in trial in a Texas case and requested a one-week continuance.  The trial judge denied the oral motion.  According to Rogers, the denial of the one-week continuance denied him his right to counsel of his choosing.  From this, citing United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2564-65 (2007) (wrongful denial of choice of counsel is structural error and therefore, not subject to harmless error analysis), he reasons that he need not have shown prejudice as a result of the denial to obtain relief of his claim.

As Respondent points out, in Gonzalez-Lopez, the government had conceded that the trial court had erred by failing to grant defendant's motion for a continuance, prompting the Supreme Court to observe, "[t]his is not a case about a court's power to enforce rules or adhere to practices that determine which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." Id. at 152, 2566.  Respondent urges that, because the trial court did not wrongfully deny Rogers'  request for a continuance in this case, the holding in Gonzalez-Lopez is not applicable and thus, his trial and appellate counsel were not ineffective for failure to raise the issue.  The undersigned agrees.

On July 19, 2002, the trial court entered an Order Setting Trial Dates, establishing August 20, 2002, as the date for Rogers' trial on indictment #02-KR-016.   The order was sent to Martin E. Regan, Jr., the Louisiana attorney retained by Rogers, and to local counsel Henry C. Clay.  On the

morning of trial, two associates of Regan appeared before the court, requesting a continuance.

According to Attorney Ken Dohre, Regan needed a continuance because a plea deal in a case that he

was handling in federal court in Texas had fallen through and Regan had to be in trial with that

defendant.  In seeking the continuance, Dohre conceded that he was aware that the trial court had

"especially picked this date."   The trial judge denied the motion, ruling as follows:

> Let the record show that the Court is going to deny that
> motion for a number of reasons.  Primarily after this case was
> continued before, at some point I talked to Mr. Regan over the
> telephone about when this case would be continued to.  I
> believe he was in Texas at the time, and he specifically gave
> me clearance for this day.  We talked about this would be the
> first week, and this was cleared with him over the phone.
> There was no indication of any other pending matters or
> anything at the time, and he was concerned about when this
> would be tried.  First of all, the Court did clear this with him,
> this specific trial date, today. Also there was some problem
> previously about this case was continued which the Court has
> some concern about the sequence of events and how it was
> continued. I am not going to get into all that now, but I do
> feel there's been some elusiveness by Mr. Reagan as far as
> trying this case with the Court, and this date was specifically
> cleared with him some several months ago.  I was given no
> indication from him that there was any problem at all with this
> date.  So the Court is going to deny that motion, and the trial
> will proceed as scheduled.

The trial proceeded with Dohre and another Louisiana attorney acting as Rogers' counsel.[5]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy

the right ... to have the Assistance of Counsel for his defence."  The Supreme Court has held that

"an element of this right is the right of a defendant who does not require appointed counsel to

---

[5]        According to the trial judge, Dohre had made "a number of appearances" in court as
counsel for Rogers prior to trial and therefore, was not new to the case.

14

choose who will represent him." United States v. Gonzalez-Lopez, 126 S. Ct. at 2562 (citing Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L .Ed.2d 140 (1988)); Cf. Powell v. Alabama, 287 U.S. 45, 53, 53 S. Ct. 55, 77 L. Ed. 158 (1932) ("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice")). However, this right to choice of counsel"'is circumscribed in several important respects,'" Id. (quoting Wheat, 486 U.S. at 159, 108 S. Ct. 1692), such that the trial court still enjoys wide latitude in balancing the right to choice of counsel against the demands of its calendar.  Id. at 151-152, 126 S. Ct. at 2555-56 (citing Morris v. Slappy, 461 U.S. 1, 11-12, 103 S. Ct 1610, 75 L. Ed. 2d 610 (1983)).

Initially, the undersigned observes that at the time that  Rogers was tried (and his motion for a continuance was denied) and at the time his appeal was initially briefed, Gonzalez- Lopez had not been decided.  In fact, the Supreme Court's decision in Gonzalez-Lopez antedated the Mississippi Supreme Court's denial of Rogers' direct appeal by fifty-three days.   Thus, given that, at the time the appeal was taken,  presentation of this claim on direct appeal would have necessitated a showing of prejudice and given its conclusion that no prejudice was manifest in the record, a conclusion by the Mississippi Supreme Court that trial and appellate counsel were not deficient for failing to recognize and raise the issue is not contrary to or an unreasonable application of Strickland.

Further, even assuming a deficiency on counsel's part, a conclusion by the Mississippi Supreme Court that the trial court's denial of the continuance was not wrongful is neither contrary to nor an unreasonable application of the federal law as determined by the Supreme Court.   In Morris v. Slappy, 461 U.S. 1, 11-12, 103 S. Ct. 1610, 75 L. Ed.2d 610 (1983), the Supreme Court held that the right to counsel is only implicated by "an unreasoning and arbitrary 'insistence upon

15

expeditiousness in the face of a justifiable request for delay.'"  Echoing this, in <u>Gonzales-Lopez</u>, the

Court took note that the trial judge's "latitude" in "balancing" even a Constitution-based counsel

demand "against the demands of [the trial court] calendar" is "wide."   <u>Gonzales-Lopez</u>, 548 U.S. at

152,  126 S. Ct. at 2566.   Here, in denying the continuance, the trial court noted that the trial had

previously been delayed, that the court had pre-cleared the specific date with Regan with no

indication from Regan of any potential conflict and that the court's sense of the situation was that

Regan may have been attempting to intentionally delay the trial. Under this factual scenario, the trial

court's decision to proceed to trial was neither unreasoned nor arbitrary, <u>see, e.g.</u>, <u>Ungar v. Sarafite</u>,

376 U.S. 575, 591, 84 S. Ct. 841, 11 L. Ed.2d 921 (1964) (stating that "[t]hese matters are, of

course, arguable, and other judges in other courts might well grant a continuance in these

circumstances, but the fact that something is arguable does not make it unconstitutional."), and the

Mississippi Supreme Court's implicit finding in this regard is neither contrary to nor an

unreasonable application of the <u>Morris</u> decision.  For the reasons stated above, the undersigned

recommends that habeas relief be denied as to Ground Two.

> 3. <u>Failure to raise the issue of the amendment of the indictment- Ground Four</u>

Rogers next asserts that trial and appellate counsel were ineffective for failing to object at

trial and raise on appeal the trial court allowing the prosecution to substantively amend the

indictment on the first day of trial in violation of the Fifth and Sixth Amendments.  In support

thereof, Rogers points out that the indictment returned against him on May 10, 2002, recited that he

was being charged pursuant to Miss. Code Ann. § 97-3-67, a statute which had actually been

repealed in 1998 and which specified the penalty for carnal knowledge of an unmarried person "of

previously chaste character" between the ages of fourteen (14) and eighteen (18).[6]   On the first day of trial, the prosecution was allowed to amend the indictment to reflect that  Rogers had actually been charged pursuant to Miss. Code Ann. § 97-3-65, the statute dealing with forcible rape[7] and to strike the words "of previously chaste character."  According to Rogers, this amendment of the indictment denied him the right to be informed of the nature and cause of the accusations against him.  He further maintains that because the language in each count of the indictment was the same, it was insufficiently specific to allow him to defend against the charges and to protect him against double jeopardy, in violation of the Fifth Amendment.

For his part, Respondent asserts that the amendment to the indictment on the first day of trial was as to form only, such that trial counsel could not be considered to have been ineffective for

---

[6]        Specifically, this section, which was repealed as July 1, 1998,  provided:

> Any person who shall have carnal knowledge of any unmarried person of previously chaste character younger than himself or herself and over fourteen (14) and under eighteen (18) years of age, upon conviction, shall be punished either by a fine not exceeding Five Hundred Dollars ($500.00), or by imprisonment in the county jail not longer than six (6) months, or by both such fine and imprisonment or by imprisonment in the penitentiary not exceeding five (5) years; and such punishment, within said limitation, shall be fixed by the jury trying each case, or by the court upon the entry of a plea of guilty.

[7] At the time of the rapes, Miss. Code Ann. § 97-3-65(2) provided:

> Every person who shall forcibly ravish any person of the age of fourteen (14) years or upward, or who shall have been convicted of having carnal knowledge of any person above the age of fourteen (14) years without such person's consent shall be imprisoned for life in the State Penitentiary if the jury by its verdict so prescribes; and in cases where the jury fails to fix the penalty at life imprisonment the court shall fix the penalty at imprisonment in the State Penitentiary for any term as the court, in its discretion, may determine.

failing to object and appellate counsel could not be ineffective for failing to raise the issue on direct

appeal.  Regarding the charging language, Respondent submits that because the indictment recited

that the charged acts occurred from December 21, 1989 to January 3, 1990, it contained sufficient

specification, and that, in any event, at trial, the Judge instructed on the four counts separately.  As

previously set forth, in passing on his application for post-conviction review, the Mississippi

Supreme Court found the underlying Fifth and Sixth Amendment claims to be procedurally barred,

and this bar, notwithstanding, to be without merit.  It further concluded with regard to the claimed

ineffective assistance, Rogers had failed to satisfy <u>Strickland</u>.  Based on the following, the

undersigned agrees that Rogers is not entitled to habeas relief on this ground.

Initially, insofar as Rogers purports to seek relief in this court because the indictment does

not comport with state law, review by this court is foreclosed.  <u>Morlett v. Lynaugh</u>, 851 F.2d 1521,

1523 (5th Cir.1988), <u>cert. denied</u>, 489 U.S. 1086, 109 S. Ct. 1546, 103 L.  Ed.2d 850 (1989) ("If the

question of the sufficiency of the indictment [under state law] is presented to the highest state court

of appeals, then consideration of the question is foreclosed in federal habeas corpus proceedings.").

Although this court may not consider the sufficiency of the indictment, it can "consider

whether the notice afforded the petitioner through the state procedures was constitutionally

sufficient under the Sixth and Fourteenth Amendments."  <u>Brown v. Cain</u>, No. CIV. A. 99-2667,

2001 WL 96410 at *2 (E.D. La., Feb. 2, 2001);  <u>See</u> <u>Cole v. Arkansas</u>, 333 U.S. 196,  201, 68 S. Ct.

514, 92 L. Ed. 644 (1948) (elementary principles of due process require that accused be informed of

specific charge against him); <u>In re Oliver</u>, 333 U.S. 257, 273, 68 S. Ct. 499, 92 L. Ed. 682 (1948)

("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his

defense ... are basic in our system of jurisprudence....").  While the federal guarantee of a grand jury

18

indictment has not been applied to the states, "the Due Process Clause of the Fourteenth Amendment does require that whatever the charging method the state chooses to employ, it must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." Brown, 2001 WL 86410 at *3. Accordingly, in the context of habeas review, "the question of whether the accused was denied the right to be informed of the charge against him does not turn exclusively upon the content of the indictment or information." Dowell v. Lensing, 805 F. Supp. 1335, 1343 (1992). Instead, "the accused's constitutional right to notice of the charge brought against him can be satisfied by the availability of other means of obtaining notice of the factual or legal basis of the charge against him, such as a bill of particulars, a preliminary examination and criminal pre-trial discovery." See Stroud v. Polk, 466 F.3d 291, 296 (4th Cir. 2006) (under United State's Supreme Court jurisprudence, "elementary principles of due process require that an accused be informed of the specific charge against him," and "a person's right to reasonable notice of a charge against him ... [is] basic in our system of jurisprudence"); Russell v. United States, 369 U.S. 749, 763, 82 S. Ct. 1038, 8 L. Ed.2d 240 (1962) (reasonable notice "sufficiently apprises the defendant of what he must be prepared to meet") .

In response to this ground, Respondent urges that Rogers not only had reasonable notice that he was being prosecuted for the crime of forcible rape, but as a factual matter, recognized that he was being prosecuted for forcible rape and not for statutory rape. Respondent first directs the court's attention to the fact that each of the four counts recites in the original indictment that Derwin Rogers "did willfully, unlawfully and feloniously have carnal knowledge of A.H., an unmarried person of previously chaste character younger than Derwin Rogers and over fourteen and under eighteen (18) years of age, by engaging in sexual penetration with the said A.H. without the consent

19

of and against the will of said A.H." (emphasis added).  He further points out that after the

prosecution had moved to amend the indictment to correct the number of the statute under which

Rogers was being charged and to strike the surplusage, the trial court reiterated several times that

Rogers had been charged with forcible rape, a defense to which was the victim's consent, and that

the present amendment did not, in any way, alter the substance of what had been charged in the

indictment.   At no time during this discourse did defendant's attorneys express surprise that their

client was facing charges that he had forcibly raped A.H.  Instead, the attorneys only made a point to

confirm with the Judge that A.H.'s consent was a defense to the crime charged.

Rogers' further charge that due process was violated because the indictment against him

contained "multiple counts of the same offense without differentiation," likewise does not provide a

basis for relief.[8]  The indictment against him contained only four charges and the charging period

constituted only  two weeks.  Moreover, each count of the indictment only purported to charge one

crime and did not purport to charge a continuing course of abuse so expansive that A.H. could not

---

[8]        In support of this claim, Rogers cites Valentine v. Konteh, 395 F.3d 626 (6th Cir.
2005), for the proposition that "[a]n indictment, which contains multiple counts of the same offense
without differentiation, violates due process, which requires that the charges be sufficiently specific
to allow defendant to defend charges and to protect against double jeopardy." As is apparent,
however, this case is not clearly established law as determined by the Supreme Court, and thus,
cannot factor into this court's review under § 2254(d).  Further, the court in Valentine ultimately
concluded that the fact that the indictment only generally recited that the twenty counts of child rape
and twenty counts of felonious sexual penetration of a minor were to have occurred  over a ten
month time span was not constitutionally problematic.  Id. at 632 ("This Court and numerous others
have found that fairly large time windows in the context of child abuse prosecutions are not in
conflict with constitutional notice requirements[,]" and concluding that "the problem [was] that
within each set of 20 counts, there [were] absolutely no distinctions made. Valentine was prosecuted
for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts.").

remember the specific instances of rape.

Based on the foregoing, the Mississippi Supreme Court's implicit conclusion regarding the alleged violation of Rogers' due process rights is not contrary to or an unreasonable application of federal law as expressed by the Supreme Court.  It follows then that the Mississippi Supreme Court's explicit finding that counsel were not ineffective for failing to object on this basis or to raise the issue on his direct appeal, is neither contrary to nor an unreasonable application of Strickland. The undersigned recommends that relief be denied as to this ground.

    4. Failure to raise the issue of the inadmissibility of victim's AH's allegedly prior consistent statements - Grounds Five and Six

    Rogers argues that at trial, without an objection from counsel, the prosecution was allowed to elicit testimony from each of its four witnesses, including A.H., the victim, that A.H. had made prior consistent statements that Rogers had threatened her with a gun and forcibly raped her.  Rogers urges that, in its closing statement, the prosecution highlighted the consistency of A.H.'s statements regarding the rapes and heavily relied on this consistency in its closing statement as a reason to believe that A.H. was forcibly raped.   He contends that the admission of A.H.'s prior consistent statements violated both his Due Process Rights and his Sixth Amendment Right to Confrontation. According to Rogers, evidence of A.H.'s prior consistent, out of court statements should have been excluded as hearsay under Rule 801(c), and not admitted under Rule 801(d) (1), because her statements were not made prior to the time that A.H. had one or more reasons to fabricate her statements.  See Rule 801(d) (1) (out of court statement not hearsay if declarant testifies at trial and is subject to cross-examination and statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive"); see Owens v. State, 666 So.2d 814, 817 (Miss. 1995) (examining Mississippi

Rule of Evidence 801(d) (1) (B) and finding to comply with rule "consistent statements must have been made prior to the arising of the alleged motive to fabricate") (citing <u>Tome v. United States</u>, 513 U.S. 150, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995) (prior consistent statements are admissible only if they are made prior to the alleged fabrication or motive to fabricate)).[9]

Rogers further contends that he was prejudiced by the admission of these statements in that the prosecution heavily relied on consistency of the victim's statements to reinforce her credibility and its entire case was predicated on the witnesses' recollections of conversations with the victim which had occurred over a decade before the trial.  Rogers maintains that trial counsel's error in failing to object was compounded by the fact that they did not request a jury instruction informing the jury that the prior statements were not to be considered substantive evidence, but rather were admissible only for the purpose of determining the victim's credibility.  As set forth above, Rogers maintains that appellate counsel should have raised this issue on appeal.

For his part, Respondent submits that the lack of an objection from trial counsel could owe to counsel's conclusion that the statements from the witnesses were admissible under a hearsay exception.  He further maintains that, in any event, Rogers cannot demonstrate prejudice as a result of his trial counsel's failure to object or appellate counsel's failure to raise the issue on appeal.

Here, Rogers' ineffective assistance of counsel claim turns on whether he can demonstrate a challenge to the admission of these statements and/or the failure of counsel to request a limiting instruction violated his due process right to a fundamentally fair trial.   See <u>Estelle v. McGuire,</u> 502 U.S. 62, 67-68, 112 S .Ct. 475, 116 L. Ed. 2d 385 (1991) (trial court's ruling is  evidentiary issue of

---

[9]        <u>Tome</u> was not a Sixth Amendment case.

State law, which is not reviewed by Court except to determine whether it violated Petitioner's right to fundamentally fair trial"); Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct 396, 38 L. Ed. 2d 368 (1973) (relevant inquiry is whether failure to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process"). By its order denying relief on Rogers' application for post-conviction relief, the Mississippi Supreme Court implicitly determined that their admission and/or failure to provide a limiting instruction did not. See O'Neal v. State, 977 So.2d 1252, 1256 (Miss. App. 2008) (Rule 103(a) of the Mississippi Rules of Evidence states that "error based upon rulings of evidence may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. To warrant reversal, the error by the trial court must have the effect of denying the defendant a fundamentally fair trial.") (internal quotation and citation omitted).

As Rogers correctly points out, at the 2002 trial, without objection from Rogers' counsel, the victim, now a thirty-year old woman living in another state, testified that in 1989, she, a then seventeen-year old ward of the state, had been placed in Rogers' care for a two-week period while her group home in Jackson was closed for the Christmas holidays. She testified that Rogers had raped her on four occasions during the two-week period that she was in his home. Upon questioning from the prosecution, she confirmed that she had consistently relayed the same story whenever called upon to do so. Significantly, she also testified that as a now thirty-year old woman, with a family in another state, she had no reason to return to Mississippi to lie about the events of 1989.

On cross-examination, Rogers' trial counsel elicited testimony that the victim's preference in 1989 was to have gone to Colorado with her former foster parents, the Franklins, and not to have

stayed with the Rogerses.  She further testified that she felt that her former foster father, Reverend Franklin, did not believe her when she disclosed the rapes to him and his wife.

At trial, the victim's case worker, Cindy Brasher, also testified.  Without objection, she was allowed to repeat the specifics of A.H.'s rape allegations that were communicated to her by the victim in 1989.  She further informed the jury that while A.H. remained in Rogers' custody, A.H. had made several attempts to contact Brasher by phone, including calling the home of Brasher's sister.  Brasher later returned A.H.'s call, and Rogers answered.   When A.H. came on the line, Brasher sensed that A.H. was uncomfortable and she told Brasher that she could not talk.

Later, upon receiving the information that A.H. had claimed that she had been raped,  she began an investigation into the allegations, which included an interview with Rogers. According to Brasher, Rogers denied the sexual allegations during the interview, stating he had made a point not to spend too much time with A.H.  Although he initially denied that he had a gun, later in the interview, he stated that he did have a gun and that he might have shown it to A.H.

On cross-examination, Rogers' counsel elicited testimony from Brasher that Mrs. Franklin had communicated to Brasher that she had difficulty believing A.H.'s allegations because A.H. could not provide Mrs. Franklin with any physical proof and that Mr. Franklin expressed misgivings about the allegations because of A.H.'s history of telling "stories."  Brasher further testified that, in 1989, when A.H. initially made the allegations, she had her own concerns as to their veracity based on A.H.'s serious psychiatric problems.  Brasher also stated that, at some point during her interview, Rogers stated that he had shown the gun to everyone in the family for their safety.

Mrs. Franklin testified that, when she and her husband went to visit A.H. at Rogers' home, she noticed a "passion mark" on A.H.'s neck and commented on it.  This prompted A.H. to ask the

Franklins to take her for a drive.  On this drive, Mrs. Franklin stated, without objection from defense counsel, that A.H. related that Rogers had forced her at gunpoint to have sex with him.  She also testified that she asked A.H. to show her the clothes that she was wearing or any other item in the room that might verify that sexual conduct had occurred and that A.H. was unable to do so because the items had been laundered.  Mrs. Franklin, deferring to her husband, only advised A.H. to call her social worker and did not report the alleged crime to the authorities.  Mrs. Franklin also testified that seven years later in 1996, she was at a meeting where another pastor, Reverend Henry Hankins, stated that Rogers had admitted to him that Rogers had sex with A.H. in 1989.

Reverend Franklin also testified that in 1989, when he and his wife went to visit A.H. at Rogers' home, she asked to go for a ride and during the ride, accused Rogers of raping her, at gun-point, more than three times.  According to Franklin, after hearing her accusations, he did not think that he could confront Rogers on this uncorroborated testimony and instructed A.H. to contact her social worker.

Reverend Franklin further relayed to the jury that in 1996, in a telephone conversation, Rogers admitted he had sex with A.H. in 1989.  He then testified that later in 1996, he was in a meeting with Rogers and three others, where Reverend Hankins announced that Rogers had admitted having sex with A.H in 1989.  According to Franklin, Hankins said he was letting Franklin know this information so that Franklin could go to his daughter (A.H.) to console her because he had failed to support her regarding the rape allegations.  Before leaving the meeting, in Rogers' presence and without any denial from him, Franklin pointed out to the group that Rogers had been lying for all these years when he had denied sexual relations with A.H. and that A.H. had stated he had raped her.

25

Upon questioning on cross-examination, Franklin stated that he could not say that he did not believe A.H. in 1989, but because she had made an accusation against an elder in the church, he did not, in good conscience, think that he could confront Rogers.  Franklin further confirmed that A.H. disclosed the rape, only after Mrs. Franklin had noticed the passion mark on her neck.

Having reviewed the record, the undersigned is not persuaded that, even assuming that the admission of the prior consistent statements was in error, their admission rendered Rogers' trial fundamentally unfair.  As seen above, with regard to the admission of each of the statements, defense counsel had the opportunity to and did challenge A.H.'s veracity at the time that the statements were made.  Defense counsel was able to elicit testimony regarding Rogers' theory that A.H. was motivated to lie in 1989 because she desired to go to Colorado with the Franklins and because the Franklins had discovered the mark on her neck.  Counsel was further able to develop testimony that none of the adults to whom she reported the crime in 1989 considered her credibility to be above reproach, and that each had misgivings as to whether her accusations could be believed.

Further, Rogers' assertion in his filing in this court that the prosecution gave great emphasis to the consistency of her prior statements in its closing statement is not accurate.   In his initial closing statement, the prosecutor, in the context of explaining the time-line of events, did refer to the fact that A.H. told the Franklin about the rapes.  As regards Brasher, the prosecutor did make one reference to the fact that A.H.'s testimony in 2002 did not vary from what she reported to Brasher in 1989.  He then went on to highlight the fact that Rogers initially denied that he had a gun and then not only admitted that he did but also that he might have shown it to A.H.  He further highlighted the fact that although Rogers had initially denied that he had sex with A.H., he admitted this fact in 1996 and that he offered no response to Mr. Franklin's statement that A.H. had accused him of

forcible rape during a 1996 face-to-face encounter.

In his final statement to jury, the prosecutor challenged the defense's assertion that A.H. had not given sufficient details of the rapes for the jury to find her testimony believable. He pointed out that A.H. had given the same details every time anyone had asked. After countering defense counsel's position that it could not have been rape because A.H. made no efforts to run away from Rogers' home, the prosecutor honed in on A.H.'s possible motives to lie. He directed the jury's attention to the fact that while a seventeen-year old child might be motivated to lie to get out of her current home situation or to avoid scrutiny for passion marks, the defense had not come up with any good reason for a happily married thirty-year old woman to agree to come to Mississippi to aid the prosecution of the case against Rogers.

Obviously, this case came down to the jury's credibilty determination. The jury had the choice to believe that Rogers forced A.H. to have sex as A.H. testified or it could have concluded that she did not lie about having sex with Rogers, but had fabricated the fact that he forced her to do so. As a result of Rogers' counsel's cross-examinations, the jury was apprised of A.H.'s motivations to lie and her general reputation for truth-telling in 1989. Ultimately, however, her motivation to lie in 1989 was not the primary focus of the prosecution's case. Instead, the prosecution pinned its argument concerning A.H.'s credibilty on the fact that she, as an adult woman, was willing to go through with the trial against Rogers. Defense counsel had no ready response to counter this argument. Given the context of the trial as a whole, the undersigned is not persuaded that the admission of these statements or failure to provide a limiting instruction rendered Rogers' trial fundamentally unfair. From this, it follows that Rogers has not been prejudiced by trial and appellate counsel's failure to raise the issue at trial or on appeal and the Mississippi Supreme

Court's denial of relief on this ground is neither contrary to nor an unreasonable application of Strickland.  Accordingly, the undersigned recommends that relief be denied as to Grounds Five and Six.

6. Failure to properly object and adequately brief issue related to the Rogers' admission that he had sex with the victim- Grounds Seven and Eight

By these grounds, Rogers urges that trial counsel was ineffective for failing to develop a record which would have been sufficient to sustain a finding that Rogers' admissions to Reverend Franklin were covered by the Priest-Penitent Privilege.   According to Rogers, trial counsel should have called Rogers and his wife in an effort to determine the "reasonableness" of their belief that Franklin was providing spiritual guidance to them as a couple.  Additionally, Rogers asserts that counsel should have developed testimony that Mrs. Franklin was effectively Reverend Franklin's co-pastor such that the fact that she also heard Rogers' admission did not negate the privilege.

With regard to appellate counsel, Rogers asserts that she was ineffective for failing to present this issue as "plain error" on appeal and for failing to argue that the trial court's misapprehension of the law regarding the Priest-Penitent privilege constituted an abuse of discretion.

On this issue, Respondent asserts, and correctly so, that Rogers cannot show any deficiency on counsel's part.  The record reflects that trial counsel sought the exclusion of both admissions on the bases that Rogers, as a couple, were receiving counseling from Franklin and that Mrs. Franklin was Reverend Franklin's co-pastor.  Based on a proffer of the evidence, the trial court denied trial counsel's motion to exclude the admissions, but granted him a continuing objection as to the testimony.

Further, appellate counsel likewise raised the Priest-Pentinent issue on appeal and it was

28

ultimately rejected by the Mississippi Supreme Court.[10]   Specifically, the Mississippi Supreme

Court ruled:

> Therefore, without waiving any procedural bar stemming from the lack of any contemporaneous objection, examination of the record reveals that the disclosure by Pastor Hankins to Reverend Franklin was not confidential. At the time the disclosure was made, Pastor Hankins, Reverend Franklin, Reverend Franklin's wife, Edna, Rogers's wife, Donna, and Rogers were all present.   Rogers never took any action to prevent the disclosure or to deny or correct the disclosure.  Furthermore, the information regarding the admission by Rogers that he had sex with A.H. had already been disclosed by Rogers to Reverend Franklin in a telephone conversation approximately two weeks before this meeting occurred.   Reverend Franklin testified that at the time of the disclosure he did not consider himself to be serving in any capacity as a pastor to Rogers and did not consider Rogers to be his parishioner or penitent at the time.  He also stated that he did not consider the conversation to be any type of confession to a preacher.
>
> M.R.E. 505(b) requires that in order for a privilege to exist the communication must have been made to a clergyman in his professional character as spiritual adviser.  See Roman Catholic Diocese of Jackson v. Morrison, 905 So.2d 1213, 1246 (Miss.2005).  "A person has a privilege to refuse to disclose and prevent another from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual adviser." M.R.E. 505(b).  Reverend Franklin testified that he did not consider himself to be Rogers' spiritual adviser nor that the communication was made to him as a confidential confession.  Rogers disclosed the same information directly to Reverend Franklin before Reverend Franklin spoke with Pastor Hankins. The disclosure was the same information regarding Rogers's admission that he had sex with A.H.  The evidence does not reflect that a priest-penitent privilege existed between Reverend Franklin and Rogers.
>
> Furthermore, Pastor Hankins' disclosure to Reverend Franklin was clearly not confidential.  M.R.E. 505(a)(2) states that "a communication is ' confidential ' if made privately and not intended for further disclosure except in furtherance of the purpose of communication."  Disclosure of confidential information or communication in the presence of third parties generally operates to waive any privilege. See Hewes v. Langston, 853 So.2d 1237, 1264 (Miss. 2003) (as applied to M.R.E. 502, lawyer-client privilege).

---

[10]     Before reaching the merits of the issue, the Mississippi Supreme Court incorrectly observed that the issue was procedurally barred from review based on trial counsel's failure to object.

As previously stated, Reverend Franklin's wife, Edna, among others, were present when the statement was made. Rogers was also present, and he took no action to prevent the disclosure or make any claim that any priest-penitent privilege existed. Furthermore, according to Reverend Franklin's testimony, the stated purpose of the disclosure was for Reverend Franklin to "console" his "daughter [A.H.]" for what had occurred. The evidence does not reflect that the communication was intended to be confidential or that it was made in a confidential manner. This assignment of error is without merit.

Rogers, 928 So. 2d at 837-38.

As trial counsel offered objections based on Miss. R. Evidence 505 and otherwise as to the Franklins' testimony regarding Rogers' admissions and as appellate counsel raised the issue on appeal, it is clear to the undersigned that the Mississippi Supreme Court's rejection of these two ineffective assistance of counsel claims raised in Rogers' application of post-conviction relief is neither contrary to, nor an unreasonable application of Strickland. Accordingly, it is recommended that relief be denied as to Grounds Seven and Eight.

8. Ground Nine- Rogers received ineffective assistance of counsel at trial and on appeal.

In addition to foregoing assertions of ineffective assistance of counsel, Rogers further maintains that other errors, individually and/or cumulatively, warrant relief. By this ground, Rogers generally complains that counsel failed to investigate as they filed no pretrial motions, made no requests for discovery, introduced no exculpatory testimony and failed to make appropriate objections. Specifically, he criticizes trial counsel for failing to use available evidence to impeach A.H.'s credibility and the Franklin's claims that their counseling sessions were not confidential. He also asserts that counsel could have introduced evidence of his good character.

Regarding appellate counsel, Rogers claims that she did not raise meritorious issues and failed to adequately brief the issues which were raised.

Respondent urges that the record does not support many of Rogers' assertions and that, in

30

any event, he has failed to demonstrate that the Mississippi Supreme Court's decision was contrary to or an unreasonable application of <u>Strickland</u>.

Initially, the undersigned observes that Rogers' general, conclusory complaints of his trial and appellate counsels' errors do not warrant habeas relief.  <u>See</u> <u>Miller v. Johnson</u>, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

Regarding the more specific allegations, the undersigned is not persuaded that Rogers was prejudiced by the failure to discover and introduce the testimony of the son of one of A.H.'s foster parents, who would have testified that A.H. made false allegations of sexual misconduct against him so that she could be moved to another foster home.  As set forth <u>supra</u> at pp. 20-27, trial counsel made numerous, effective inquires as to A.H.'s credibility at the time that she initially complained to authorities.  The undersigned is not persuaded that further testimony on her credibility in 1989 would have altered the course of the trial.

According to Rogers, trial counsel should have called Donna Franklin and Reverend Hankins to impeach the claims that the sessions involving Rogers and Reverend Franklin were not confidential.  However, as Respondent points out, Donna Rogers' proposed testimony as to what she believed that her husband believed about his discussions to and in front of Reverend Franklin would not have been admissible.   Additionally, it is clear that trial counsel's failure to call Reverend Hankins, who was providing spiritual counseling to Rogers, was a reasonable strategic decision, which is not subject to second-guessing.  <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065 ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy") (internal citations and quotations omitted).  Among other things, trial counsel may not have called Hankins to testify that, during the 1996 meeting, he informed Reverend Franklin that he would be "taking over" Rogers' counseling (as Rogers proposes) due to concerns that Hankins' testimony may constitute a waiver of any privilege and/or that cross-examination of Hankins could lead to more condemning evidence against Rogers.  Finally, given that Rogers, a married man and a minister, who was under indictment in two other cases, and had admitted to having sex in his home with a child placed in his custody by the State, it is clear that any failure on trial counsel's part to provide evidence of his good character is properly considered a matter of reasonable trial strategy.

Based on the foregoing, the undersigned concludes that the Mississippi Supreme Court's decision as to this ground was neither contrary to nor an unreasonable application of <u>Strickland</u>.  Accordingly, it is recommended that relief be denied as to this ground.

### III. Conclusion

For the reasons above, it is therefore the recommendation of the undersigned that the petition of Derwin Rogers be dismissed with prejudice and that a Final Judgment in favor of the Respondent be entered.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED this the 18th day of February, 2011.


/s/   Keith Ball_____
UNITED STATES MAGISTRATE JUDGE